UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERRILEE ONEY,

                Plaintiff,

                                            **Hon. Hugh B. Scott**

            v.                                  12CV872A

                                             **Report**
                                              **and**
CAROLYN W. COLVIN, Acting               **Recommendation**
Commissioner of Social Security[1],

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (defendant Commissioner), 13 (plaintiff)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Terrilee Oney ("Oney" or "plaintiff"), filed an application for disability insurance benefits and supplemental security income on September 2, 2008. That application was denied initially and on reconsideration. The plaintiff appeared before Administrative Law

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Colvin is substituted for now former Commissioner Michael J. Astrue as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

Judge MaryJoan McNamara ("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated January 19, 2011, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on July 16, 2012, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 17, 2012 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12, 13), responded to the opponent's motion (Docket No. 15 (defendant)), and replied (Docket No. 17 (plaintiff)). The motions were submitted on papers (Docket Nos. 10, 11; <u>see also</u> Docket No. 16).

## FACTUAL BACKGROUND[2]

Plaintiff, born in 1961, claims impairments degenerative disk disease, insulin dependent diabetes mellitus complex regional pain syndrome (or "CRPS"), and neuropathy. Plaintiff has a high school education and employment history as a housekeeper, folder, teacher's aide, and newspaper carrier (R. 60). She claims an onset date of August 25, 2008.

At the time of her hearing, Oney was 47 years old (R. 60). Plaintiff testified at her hearing that she last worked in 2008 as a newspaper and magazine delivery person, but the loading and unloading of papers became too much for her (R. 18). She stated that she reads regularly, gets out of the house daily but does not do her own shopping (R. 21); her children pick up items for her while shopping (R. 30). She claims that she is a "brittle diabetic" and has problems with her shoulders and neck (R. 22, 23-24, 28). She drives short distances (to her daughter's house) (R. 28). Plaintiff dresses herself, but with problems lifting to put on her shirt

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings.

or tie her shoe laces (R. 29). When she sits for long periods of time (beyond 20 minutes), plaintiff needs to get up and move around due to her neck and lower back (R. 32-33) and she does not use the computer due to the sitting required (R. 34). Her son and friends shovel her driveway and walk in the winter (R. 30).

## MEDICAL AND VOCATIONAL EVIDENCE

At issue are the ALJ's findings regarding plaintiff's claimed diabetes and CRPS and neuropathy. The ALJ found that plaintiff suffered a severe impairment from degenerative disc disease (R. 53-55) but not from diabetes or CRPS (R. 54). The ALJ found that plaintiff suffers from severe back impairment (R. 54), which she claims she had since August 2008 (Docket No. 13, Pl. Memo. at 4; R. 226 (Aug. 14, 2008, MRI results)). Regarding her diabetes, the ALJ found that plaintiff, although insulin dependent, did not have a record to demonstrate that this impairment affected plaintiff's ability to function in the workplace (R. 54).

On her CRPS and neuropathy, plaintiff complains of knee pain in her right knee since August 2003 after she twisted it while ascending stairs at work (Docket No. 13, Pl. Memo. at 2-4; R. 194, 204-05, 201-02 (arthrosporic surgery on knee in 2004), 196, 213-15, 207-08). Dr. Romanthe Waghmarae diagnosed plaintiff having CRPS in March 2006 (R. 55, 213-15). But an MRI of plaintiff's right knee in July 2008 did not find any deformity (R. 230). The ALJ found that no other reports support Dr. Waghmarae's diagnosis, particularly that no subsequent records after 2008 show this diagnosis and thus do not demonstrate the continued severity (R. 55). Dr. Kathleen Kelley conducted an Internal Medicine Evaluation of plaintiff and the doctor did not find any neuropathy (R. 254). Dr. Kelley noted that plaintiff had a slight decrease in the range of motion in her right knee and had "questionable neuropathy of her feet" (R. 255),

advising that plaintiff refrain from heights in her work (id.). The ALJ then found that there were no medical records beyond 2008 to justify continuation of CRPS or neuropathy, concluding that these conditions were not severe (R. 55, 59).

Plaintiff counters that she had her spine examined in October 13, 2010, by an MRI, and that Dr. Waghmarae referred to an Internal Medicine Evaluation and report by Dr. Owen Young (R. 214). Plaintiff argues that Dr. Young's report was not in the record before the ALJ (Docket No. 13, Pl. Memo. at 10-13). She also faults the ALJ for not inquiring of her treating physician, Dr. Pravin Mehta, his opinion regarding her disability (id. at 12), when Dr. Mehta wrote that plaintiff suffered from CRPS, herniated disc L4-L5 and L5-S1, and permanent nerve damage in her right leg and was disabled from any physical work (R. 282).

The ALJ found, however, that plaintiff did not have an impairment or combination of impairments that met or equaled the listed impairments from the Social Security regulations, concluding that plaintiff did meet the criterion of having a "gross anatomical deformity and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joints" under Listing 1.02, Disorders of the Musculoskeletal System, 20 C.F.R. § 404, Subpt. P, App. 1, 1.02 (R. 55-56). "Although the claimant was diagnosed with CRPS in March of 2006, due to the pain in her knee, the x-rays that were taken of the claimant's knee in September of 2006 revealed unremarkable findings" (R. 55 (citing Ex. 4F, page 13); but cf. R. 231 (Ex. 4F, page 13, MRI of July 11, 2008)). The July 11, 2008, report apparently cited by the ALJ found that the MRI of the right knee revealed an "unremarkable" joint (R. 231). The ALJ then concluded that there were no other records to refute the finding that the right knee was

4

within normal limits on the onset date (R. 56) and that claimant's impairments did not meet the criteria for Listing 1.02 (id.).

The ALJ adopted the findings of Internal Medicine Evaluation of Dr. Kelley (R. 57-58, 59). The ALJ, however, gave limited weight to the opinions of plaintiff's treating physician, Dr. Mehta since there are no "legible supporting treating notes to support his opinion" or recent treatment visits after October 2008 (R. 58-59, 282).

The ALJ concludes that Oney's "medically determinable impairments could reasonably be expected to cause some of her alleged pain symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (R. 57). Where medical evidence corroborated plaintiff's claims, the ALJ made accommodations in the type of light work she could perform (R. 57-58). The ALJ found that plaintiff could perform with a residual functional capacity for light work with restrictions regarding continuous use of the right dominant upper extremity, and that plaintiff would need a stand/sit option. The ALJ found that plaintiff should not climb ladders, ropes, or scaffolds, but could occasionally climb stairs or ramps. The ALJ also found that Oney could not complete repetitive bending or twisting. She could, however, occasionally balance, stoop, kneel, crouch, and crawl. While plaintiff should avoid heights, the ALJ concluded that she had no manipulative or visual limitations. (R. 56.) The ALJ concluded that plaintiff could not return to her past relevant work as a housekeeper, folder, teacher's aide, and newspaper carrier (R. 60).

Vocational expert Joey Kilpatrick, when asked whether there exists jobs in the national economy for an individual with plaintiff's age, education, work experience, and residual

functional capacity, opined that this hypothetical claimant in plaintiff's situation with a stand/sit option could perform light exertional level work as a napkin band wrapper, laundry folder, or a parking lot attendant, all occupations in the national and regional economy of New York State (R. 61, 36-40).

The ALJ then concluded that Oney was not disabled (R. 61).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing her past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

*Application*

In the instant case, Oney argues that the ALJ failed to evaluate the record for her diabetes and complex regional pain syndrome (Docket No. 13, Pl. Memo. at 8-10). She next claims that the ALJ failed to develop the record regarding workers' compensation materials that were not considered with her application but which plaintiff believes are relevant to her claim (id. at 10-11). She faults the ALJ for arriving at the residual functional capacity prior to making a credibility assessment of plaintiff's testimony regarding the intensity of her impairment (id. at 14). Finally, plaintiff argues that the vocational expert cannot provide substantial evidence to support the ALJ's findings since the expert relies upon the faulty record just discussed (id. at 16-17).

Defendant Commissioner responds that the ALJ reasonably found that plaintiff's diabetes and CRPS were not sufficiently severe to be disabling impairments (Docket No. 15, Def. Responding Memo. at 1-2). Alternatively, defendant contends that if the diabetes or CRPS were disabling, the failure to so find was harmless error since plaintiff has other severe impairments (id. at 2-3). As for the workers' compensation records plaintiff urges should have been produced, defendant argues that these predate plaintiff's onset date (id. at 4). Defendant

8

concludes that the ALJ properly assessed plaintiff's credibility (Docket No. 12, Def. Memo. at 21-23; Docket No. 15, Def. Memo. at 6). As for plaintiff's vocational expert arguments, defendant dismisses them as a rehash of her prior arguments underlying the facts used by that expert in reaching her opinions (Docket No. 15, Def. Memo. at 8).

I.  ALJ's Failure to Develop the Record

Oney first argues that the ALJ erred in failing to evaluate the record for her diabetes and CRPS.

   A.  Diabetes

Plaintiff complains that the ALJ failed to evaluate her medical record for diabetes by not considering an electromyographic examination (or "EMG") administered on October 13, 2008, which revealed sensorimotor axonal polyneuropathy, or diseases of many nerves, of the bilateral lower extremities (Docket No. 13, Pl. Memo. at 9 n.3; Docket No. 17, Pl. Reply Memo. at 1-2; R. 245) and plaintiff's need for an insulin pump (Docket No. 17, Pl. Reply Memo. at 2). Defendant characterizes this EMG test as revealing "evidence of only mild polyneurology" (Docket No. 12, Def. Memo. at 19). Defendant concludes that even if plaintiff's diabetes and CRPS (discussed below) were severe, there was no evidence that these ailments would have reduced her residual functional capacity (Docket No. 15, Def. Memo. at 3). Plaintiff denies that this finding is harmless error (but cf. Docket No. 15, Def. Memo. at 2-3) because the ALJ later concluded that plaintiff was capable of light work and could stand for 6 of 8 hours (Docket No. 17, Pl. Reply Memo. at 2).

There is no harmless error here in the diabetes finding since the ALJ found that there was no combination of limitations that met the standards for disability. While finding that plaintiff

9

had a severe back impairment, the ALJ excluded her diabetes (among other claimed ailments) in concluding that there was no combination of limitations that met the regulatory standard.

There is an issue with the EMG of October 13, 2008 (R. 245), since its results are ambiguous. The test found that plaintiff had polyneuropathy but this polyneuropathy was mild. This ambiguity (and ultimately whether this polyneuropathy was sufficiently severe to render the diabetes by itself or in combination with plaintiff's back impairment to meet or exceed regulatory standards for disability) **needs to be resolved by the ALJ by reopening the record**.

  B. Complex Regional Pain Syndrome

As for her CRPS, plaintiff argues that the ALJ did not consider the Internal Medicine Evaluation by Dr. Young cited by Dr. Waghmarae that support Dr. Waghmarae's diagnosis (Docket No. 13, Pl. Memo. at 9-10). The ALJ compounds this error by not obtaining Dr. Young's report in her medical record (id. 10-11). This latter point is considered below in discussing whether the ALJ fully developed the record. Regarding the CRPS diagnosis, the ALJ erred in not including, and then commenting upon, Dr. Young's report, and by assuming that the CPRS diagnosis was exclusively from Dr. Waghmarae. This omission, while addressing the pre-onset period, does not address the defendant's argument that post-2008 records are lacking to support a finding of continuing limitation.

Since it is recommended that the medical record be reopened as to diabetes, it should also **be reopened for plaintiff's CRPS**.

II. Failure to Develop the Record

Oney next argues that the ALJ failed to consider workers' compensation records that were cited by her treating physician, Dr. Waghmarae (Docket No. 13, Pl. Memo. at 10-11). In

reply, she concludes that these records are relevant, albeit predating her onset date as stated in her application (Docket No. 17, Pl. Reply Memo. at 3; cf. Docket No. 15, Def. Memo. at 4). She argues this despite having her counsel admit during the hearing that the administrative record was complete (R. 15; see Docket No. 15, Def. Memo. at 5).

Defendant Commissioner argues that she must recontact medical sources only if the evidence received is inadequate for the Commissioner to determine whether plaintiff is disabled, 20 C.F.R. § 404.1512(e) (Docket No. 15, Def. Memo. at 4). Defendant concludes that the ALJ could decide based upon the medical record before her (id.).

Plaintiff asserts that the ALJ has an affirmative duty to develop the record (Docket No. 13, Pl. Memo. at 10-11, 11 n.4, quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting in turn Echevarria v. Sec'y of HHS, 685 F.2d 751, 755 (2d Cir. 1982); citing 20 C.F.R. § 404.1512(d)-(f) (2011)). In reply, she argues that the ALJ had an obligation to obtain her complete medical history for twelve months prior to the application or earlier "unless there is reason to believe that development of an earlier period is necessary," 20 C.F.R. § 404.1512(d) (Docket No. 17, Pl. Reply Memo. at 3).

Plaintiff argues that the ALJ thus relied upon a limited and inadequate medical record, by disregarding the EMG studies showing neuropathy (R. 245), and by relying upon the treating notes of Dr. Gregory Castiglia, physical therapy notes (which are not treating notes), the consultative examination of Dr. Kelley, x-rays, MRIs, and EMG studies (Docket No. 17, Pl. Reply Memo. at 4). Although plaintiff's counsel initially said the record was complete, he later brought the omitted VESID records to the ALJ's attention and the ALJ acknowledged that the physical therapy records were missing (Docket No. 17, Pl. Memo. at 5; R. 44, 25).

11

In reopening the record, plaintiff faces issues of the legibility of Dr. Mehta's treating notes from August to October 2008, as well as the dearth of medical records after August 2008 to show continuing disability from August 2008 to January 19, 2011, the date of the hearing (cf. Docket No. 12, Def. Memo. at 19; Docket No. 15, Def. Memo. at 4, 5; R. 59). She also needs to show that her medical condition earlier than twelve months before her onset date "is necessary," 20 C.F.R. § 404.1512(d), to develop the record for her 2008-11 ailments.

III.    Credibility Assessment

The ALJ found incredible plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms, overstating her functional limitations (R. 57). Plaintiff faults the ALJ's analysis for arriving at the residual functional capacity (of her being capable of performing light work) before making her credibility assessment (Docket No. 13, Pl. Memo. at 14). As for plaintiff actively seeking work while disabled (cf. Docket No. 15, Def. Memo. at 6), plaintiff responds that, as a workers' compensation claimant, she was obliged to attempt to seek work (Docket No. 17, Pl. Reply Memo. at 5-6).

In considering plaintiff's credibility, the ALJ considered the extent and frequency of her treatment, which the ALJ and defendant characterize as a conservative regime of muscle relaxants, non-narcotic pain medication, and physical therapy (see Docket No. 15, Def. Memo. at 6; Docket No. 12, Def. Memo. at 22; R. 54-56), and noting the infrequency of her treatment after 2008 (Docket No. 12, Def. Memo. at 22-23; Docket No. 15, Def. Memo. at 6; R. 57, 59). The ALJ also factored in plaintiff's activities in her daily life (R. 57; Docket No. 15, Def. Memo. at 6; Docket No. 12, Def. Memo. at 23), but plaintiff avoided or limited several common daily activities due to her condition (such as participating in shopping, limiting her hobbies, and

12

restricting the range in her driving). Even discounting her attempts to find work, as required by workers' compensation, the ALJ could discount plaintiff's statements about the intensity, persistence, and limiting effects of her condition based upon the extent of medical treatment she sought for those ailments. This Court does not conduct a de novo review of the facts or assessment of credibility; rather, the Court only determines if there is substantial evidence for the ALJ's determinations. As to substantial evidence, here plaintiff's treatment records and the frequency of her treatment after 2008, as that record was developed support the ALJ's credibility assessment of plaintiff's testimony. This assessment, of course, may change with added evidence upon the reopening of this case.

IV.     Vocational Expert

Plaintiff faults the ALJ in posing hypotheticals to the vocational expert based upon flawed and incomplete premises (Docket No. 13, Pl. Memo. at 16-17). The ALJ posited a hypothetical of a claimant the ALJ contends was similar to plaintiff, with the residual functional capacity the ALJ later found (R. 37, 61). Defendant contends that plaintiff faults the hypotheticals solely upon the arguments raised against the underlying evidence (Docket No. 15, Def. Memo. at 8).

Hypothetical questions to a vocational expert may be used, provided that the questions incorporate the full extent of claimant's physical and mental limitations, Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (Docket No. 12, Def. Memo. at 23-24). Thus, the discussion above as to the ALJ's findings on plaintiff's limitations are critical to analyzing whether the vocational expert was given the proper facts to render her opinion. Given that the hypotheticals are based upon a residual functional capacity to perform light work (with noted

limitations), any change in that analysis based upon additional evidence would change the facts for the vocational expert to consider.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant Commissioner's motion for judgment on the pleadings (Docket No. 12) should be **denied** and plaintiff's motion for similar relief in her favor (Docket No. 13) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a). <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>** <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale</u>

Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                */s/ Hugh B. Scott*
                                                Hon. Hugh B. Scott
                                         United States Magistrate Judge

Buffalo, New York
September 10, 2013